

**FILED**

*12:11 pm, 12/11/25*

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

IBRAHIM MOUSSA,

      Petitioner,

VS.

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT
DENVER FIELD OFFICE DIRECTOR,
*in his official capacity*, also known as,
Robert Guadian,

      Respondent.

Case No.  25-CV-00269-ABJ

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

**THIS MATTER** is before the Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by pro se petitioner, Ibrahim Moussa. [ECF 1] The Court, having considered the petition, response, and being otherwise fully advised, concludes the petition must be **GRANTED**.

### *BACKGROUND*

Mr. Moussa is a native of Chad. [ECF 1 ex. 1 p. 3] Customs and Border Patrol (CBP) picked up Mr. Moussa near Sasabe, Arizona on June 17, 2024. [ECF 7 p. 2] When CBP was arranging for Mr. Moussa's removal back to Chad, Mr. Moussa claimed a fear of persecution and was sent to the United States Citizenship and Immigration Services (USCIS) for a "credible fear interview." [ECF 7 p. 2] USCIS never conducted the credible

1

fear interview—perhaps because it could not locate a qualified interpreter—and Mr. Moussa was transferred to ICE custody. [ECF 7 p. 2] On November 21, 2024, Mr. Moussa applied for asylum, withholding of removal, and protection under the Convention Against Torture. [ECF 7 p. 2]  On March 27, 2025, an Immigration Judge determined Mr. Moussa was inadmissible pursuant to INA §§ 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i).  [ECF 1 ex. 1 p. 1] The Immigration judge denied his asylum application finding:

> The Respondent is ineligible for asylum due to the application of the 6/3/2024 Presidential Proclamation, Proclamation 10773, Securing the Border.  Under that proclamation, aliens who cross the southern border on or after 6/5/2024, and who are not excepted from the Proclamation, are ineligible for asylum unless exceptionally compelling circumstances exist. Here, the respondent entered the United States on or about 6/17/2024 and is subject to the proclamation. No exceptionally compelling circumstances exist to provide the respondent with eligibility.  The Court notes that but for the Presidential Proclamation, the Respondent would have been granted asylum given that the Respondent satisfied the higher burden to establish eligibility for Withholding of Removal.

[ECF 1 ex. 1 p. 2] The Immigration Judge ordered Mr. Moussa removed to Chad and then granted Withholding of Removal under INA § 241(b)(3). [ECF 1 ex. 1 pp. 3-4] The Immigration Judge's order became administratively final on March 27, 2025. [ECF 7 p. 2]

Mr. Moussa seeks relief under 28 U.S.C. § 2241 and asserts he is being held in violation of the Fifth Amendment. [ECF 1 p. 6] This Court ordered the Government to respond to Mr. Moussa's petition and show cause why his petition should not be granted. [ECF 2] The Court found Mr. Moussa's petition presented sufficient information to shift the burden to Government to present evidence to show a significant likelihood of removal in the reasonably foreseeable future. [ECF 2 p. 3] Respondent asked for more time to

2

respond to the Petition and show cause order and the Court granted an extension. [ECF 5] Petitioner had until December 10, 2025 to file a reply. [ECF 5] This petition is now ripe for review.

## *DISCUSSION*

Mr. Moussa filed his petition pro se. The Court liberally construes the filings of pro se litigants and holds them to a less stringent standard than those drafted by attorneys. *United States v. Hald*, 8 F.4th 932, 949, n. 10 (10th Cir. 2021). However, "it is not . . . the 'proper function of the district court to assume the role of advocate for the pro se litigant.'" *Rigler v. Lampert*, 248 F.Supp.3d 1224, 1232 (D. Wyo. 2017) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

### *I. Petition [ECF 1]*

Mr. Moussa has been detained for more than eight months, which is beyond the presumptively reasonable six-month period established by the Supreme Court. *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). The Immigration Court granted Withholding of Removal and, thus, Mr. Moussa cannot be removed to Chad. [ECF 1 ex. 1 p. 4] He asserts he is not a danger to the community or a flight risk. [ECF 1 pp. 6-7] He further contends Respondent has offered no justification for his extended detention beyond the ninety days allowed by statute. [ECF 1 p. 6] Despite being civilly detained, he is housed in the Natrona County Detention Center with individuals awaiting trial or convicted of crimes, under lockdown conditions, which, according to Mr. Moussa, means he is in a four meter by two-meter cell, nineteen hours a day. [ECF 1 p. 7]

## II. *Response [ECF 7]*

In response, Respondent argues Mr. Moussa has been ordered removed from the country by an immigration judge and is, therefore, mandatorily detained pursuant to 8 U.S.C. § 1231. [ECF 7 p. 5] Respondent notes that the Immigration Court denied asylum, which would have granted Mr. Moussa the ability to remain in the United States. [ECF 7 pp. 5-6] Instead, the immigration judge granting withholding of removal which means Mr. Moussa is ordered removed from the United States, but prevents his removal back to Chad. [ECF 7 p. 6] Respondent states it submitted a Request for Acceptance of Alien to Germany, France, and Australia on April 21, 2025, and the next day, each country declined to accept Mr. Moussa. [ECF 7 ex. 1 p. 4] Two months later, on June 19, 2025, ICE made a Request for Acceptance to Guatemala, Panama, and Nicaragua. [ECF 7 ex. 1 p. 4] To date, ICE has not received responses to its second set of requests. [ECF 7 ex. 1 p. 4]

Respondent argues it conducted a Post Order Custody Review pursuant to 8 C.F.R. § 241.4 on July 28, 2025, and determined Mr. Moussa is not eligible for release because he poses a significant flight risk since he has a "final order of removal and the pendency of this removal from the United States." [ECF 7 ex. 1 p. 4] However, when required to provide a timeline for removal by the Court, Respondent admitted it could not do so. [ECF 7 ex. 1 p. 5] Respondent asserts ICE is coordinating with DHS and the State Department to evaluate and select a third country for removal. [ECF 7 ex. 1 p. 5]

## III. *Detention under 8 U.S.C. § 1231*

A writ of habeas corpus under 28 U.S.C. § 2241 may be granted to an individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

4

§ 2241(c)(3). When a noncitizen is ordered removed, generally, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a). That ninety-day period is known as the "removal period." *Id.* Where the Government fails to remove a noncitizen within the removal period, further detention is authorized when the noncitizen is: "(1) 'inadmissible' under certain grounds, (2) 'removable' as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, (3) or has been 'determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Salad v. Dep't of Corr.*, 769 F. Supp. 3d 913, 920 (D. Alaska 2025) (citing *Zadvydas*, 533 U.S. at 682); 8 U.S.C. § 1231(a)(6).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the removal period. 533 U.S. 678, 683 (2001). It held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *Id.* at 699. According to the Supreme Court, the basic question a habeas court must decide is whether "the detention in question exceeds a period reasonably necessary to secure removal." *Id.* It found a presumptively reasonable detention period of six months. *Id* at 701. After six months,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.

*Id.*

In total, ICE has detained Mr. Moussa for eighteen months. [ECF] Significantly, Respondent concedes Mr. Moussa's detention exceeds the six-month presumptively reasonable post-removal order detention period. [ECF 9 & 15] The Immigration Judge's order became final on March 27, 2025. [ECF 7 p. 2] Thus, Respondent has detained Mr. Moussa for nearly nine months after the detention order became final. This is a significant amount of time past the presumptively reasonable six-months considered by the Supreme Court in *Zadvydas*. *See e.g.*, *Moreno v. Bondi*, No. 25-3168-JWL, 2025 WL 2926547, at *3 (D. Kan. Oct. 15, 2025) (petitioner held in post-removal order detention for seven and a half months entitled to habeas relief); *MOHAMMAD MOMENNIA, Petitioner, v. PAMELA BONDI, Att'y Gen., et al., Respondents.*, No. CIV-25-1067-J, 2025 WL 3011896, at *7 (W.D. Okla. Oct. 15, 2025) Report and Recommendation Adopted at No. CV 25-1067-J, 2025 WL 3006045, at *2 (W.D. Okla. Oct. 27, 2025) (granting habeas relief where petitioner held for six and a half months post-removal order); *BRAYAN ANDUAGA-COLIN, Petitioner, v. PAMELA BONDI, Att'y General; KRISTI NOEM, Sec'y, Dep't of Homeland Security; SAMUEL OLSON, Dir., ICE Field Office; & C. CARTER, Warden, FCI-Leavenworth, Respondents.*, No. 25-3151-JWL, 2025 WL 2926546, at *3 (D. Kan. Oct. 15, 2025) (petitioner detained for eight months post-removal order entitled to habeas relief).

Having previously determined Mr. Moussa met his initial burden and has been detained for longer than the presumptively reasonable time, the Court turns to whether the Government successfully rebutted his showing that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In response to

6

the Court's order to show cause, the Government stated it had contacted six countries soliciting acceptance of Mr. Moussa: Germany, France, Australia, Guatemala, Nicaragua, and Panama. [ECF 7 ex. 1 p. 4] The first three immediately responded and declined acceptance. [ECF 7 ex. 1 p. 4] The Government waited two months after the denials to request acceptance from the second three countries and has now been awaiting a response for six months. [ECF 7 ex. 1 p. 4] Despite requesting acceptance from Nicaragua, Guatemala, and Panama, and working with DHS and the State Department to locate a third country for removal, Respondent cannot provide an expected timeline for Mr. Moussa's removal from The United States.

The Government's response is not sufficient to demonstrate a significant likelihood of removal in the reasonably foreseeable future. While it is true that the Government took steps to remove Mr. Moussa by soliciting six countries to accept him, no progress has been made since it requested acceptance from Nicaragua, Guatemala, and Panama six months ago. This does not demonstrate Mr. Moussa's removal is likely in the reasonably foreseeable future. Likewise, the Government's vague assertion that is cooperating with Department of State and DHS to evaluate and select a third country for removal does not demonstrate a significant likelihood of removal in the reasonably foreseeable future. Finally, the Government candidly admitted it cannot provide a timeline for Mr. Moussa's removal from the United States. Nothing presented by the Government suggests that removal is likely in the foreseeable future.

Despite making no progress on Mr. Moussa's removal from the United States, Respondent contends Mr. Moussa poses a significant flight risk and must remain detained

7

because he is subject to a final removal order. [ECF 7 ex. 1 p. 4] However, this general conclusion is not specific to Mr. Moussa—the same is true for likely tens of thousands of individuals in ICE detention facilities and county jails nationwide. And, "preventing flight . . . is [a] weak or nonexistent [justification] where removal seems a remote possibility at best." *Zadvydas*, 533 U.S. at 690; *See also e.g., Jimenez Chacon v. Lyons,* No. 2:25-CV-977-DHU-KBM, 2025 WL 3496702, at *7 (D.N.M. Dec. 4, 2025); *Ahrach v. Baltazar,* No. 25-CV-03195-PAB, 2025 WL 3227529, at *5 (D. Colo. Nov. 19, 2025).

Notably, the Immigration Judge found Mr. Moussa inadmissible under INA § 212(a)(7)(A)(i)(I). This section is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I) and provides:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission—
>
> **(I)** who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible.

8 U.S.C. § 1182(a)(7)(A)(i)(I). The Immigration Judge also found him inadmissible pursuant to INA § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), and stating: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i). Thus, the Immigration Judge found Mr. Moussa inadmissible because he did have valid entry paperwork, and because he entered the country without being admitted or paroled, or because he entered the country at a place

8

other than one designated by the Attorney General. [ECF 1 ex. 1 p. 1] The Immigration Judge noted he would have granted Mr. Moussa's asylum request if not for the Presidential Proclamation. [ECF 1 ex. 1 p2] Mr. Moussa was not denied entry because he had a criminal record or would be otherwise a danger to the community.

The Government failed to rebut Mr. Moussa's showing under *Zadvydas* and has not demonstrated his continued detention is required by 8 U.S.C. § 1231(a)(6). The Government has provided nothing to his Court that would legally allow Mr. Moussa's continued detention while it seeks his removal to a third country. Because Mr. Moussa's removal is not reasonably foreseeable, his "continued detention is unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699-700.

## *CONCLUSION*

Mr. Moussa's continued detention is unlawful.[1] The Court, therefore, **GRANTS** his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [ECF 1] A Writ shall issue.

**IT IS FURTHER ORDERED** Respondent shall release Petitioner from custody, subject to an appropriate order of supervision, by **December 21, 2025**, and shall provide notice to this Court when Mr. Moussa is released from custody.

Dated this 12th day of December, 2025.

Alan B. Johnson
United States District Judge

---

[1] As noted in this Court's separately issued Writ of Habeas Corpus, Mr. Moussa shall be subject to appropriate conditions of release necessary to protect the public safety and promote the ability of the Service to affect his removal to a third country. *See* 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.13(h).

9